## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME JUNIOR WASHINGTON,

      Plaintiff,

    v.

C.O. ANNA, *et al.*,

      Defendants.

No. 4:22-CV-01744

(Chief Judge Brann)

## MEMORANDUM OPINION

### JULY 10, 2024

Plaintiff Jerome Junior Washington, a serial *pro se* litigant, lodged the instant Section 1983[1] action in November 2022, alleging constitutional violations by two prison officials at SCI Rockview.  Washington's Section 1983 claims have been winnowed to a First Amendment retaliation claim against a single corrections officer.  That Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on this remaining claim.  For the following reasons, the Court will grant Defendant's Rule 56 motion.

---

[1]  42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I.    FACTUAL BACKGROUND[2]

During all times relevant to the claims underlying this lawsuit, Washington was incarcerated at SCI Rockview.[3]  Washington is now housed at SCI Camp Hill.[4]  In his complaint, Washington alleged that two SCI Rockview officials—Corrections Officer Anna and Superintendent Bobbi Jo Salamon—violated his First, Eighth, and Fourteenth Amendment rights.[5]

Specifically, Washington asserted that, on February 16, 2022, Anna placed him into a dirty cell without a mattress or bedroll for a day, thus violating his Eighth Amendment rights.[6]  He additionally claimed that this cell placement was retaliation for unspecified "grievances [and] lawsuits."[7]  Washington also alleged

---

[2]   Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.*  "Statements of material facts in support of, or in opposition to, a motion [for summary judgment] shall include references to the parts of the record that support the statements." *Id.*  Defendant filed a properly supported statement of material facts. *See* Doc. 39.  Washington responded to this statement. *See* Doc. 48.  Many of Washington's responses, however, lack citations to the record or contain citations that simply do not support his counterstatements of fact.  This directly contravenes Local Rule 56.1. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (explaining that Local Rule 56.1 "is essential to the Court's resolution of a summary judgment motion due to its role in organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence." (internal quotation marks and citations omitted)).  Defendant's statements of material facts, therefore, are deemed admitted unless properly countered by Washington with citations to competent record evidence supporting Washington's counterstatements of fact. *See* LOCAL RULE OF COURT 56.1.

[3]   Doc. 39 ¶ 1.

[4]   *See* Doc. 52 at 16.

[5]   *See generally* Doc. 1; *see* Doc. 9 at 4.

[6]   Doc. 1 ¶ 14; Doc. 9 at 6.

[7]   Doc. 1 ¶¶ 13, 14, 17; Doc. 9 at 8.

that Anna retaliated against him by losing or destroying his outgoing mail (which contained artwork) on March 24, 2022.[8]  In addition, Washington appeared to include a Fourteenth Amendment deprivation-of-property claim regarding the lost or destroyed artwork.[9]

The Court screened Washington's prisoner complaint as required by 28 U.S.C. § 1915A(a) and dismissed all claims except the First Amendment retaliation claim against Anna.[10]  The Court gave Washington the option of filing an amended complaint to cure his pleading deficiencies or proceeding with the single retaliation claim.[11]  Washington elected to proceed with his First Amendment retaliation claim against Anna only.[12]

In November 2023, Anna moved for summary judgment on the remaining retaliation claim.[13]  After several failed attempts, Washington eventually filed a brief in opposition that complied with the Local Rules of Court.[14]  On July 3, 2024, Defendants filed a reply brief.[15]  Anna's Rule 56 motion is now fully briefed and ripe for disposition.

---

[8] *See* Doc. 9 at 8.
[9] *Id.* at 9-10.
[10] *See* Doc. 10 ¶ 1.
[11] *See id.* ¶¶ 2-3.
[12] *See* Docs. 11, 12.
[13] Doc. 35.
[14] *See* Docs. 47-52.
[15] Doc. 57.

## II.     STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[16]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[18]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[19]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[20]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[21]  A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury

---

[16]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[17]   FED. R. CIV. P. 56(a).

[18]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[19]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[20]   *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

[21]   *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

4

could reasonably find for the [nonmovant]."[22]  Succinctly stated, summary

judgment is "put up or shut up time" for the nonmoving party.[23]

## III.   DISCUSSION

As noted above, Washington's remaining Section 1983 claim asserts First

Amendment retaliation.  He alleges that, after filing unspecified "grievances [and]

lawsuits," Anna retaliated against him by housing him in a dirty cell without a

mattress or bedroll for a single day and by losing or destroying his artwork.

Anna maintains that Washington cannot carry his Rule 56 burden for

multiple reasons.  He contends that Washington failed to exhaust administrative

remedies with respect to his retaliation claim.  He also asserts that Washington

cannot show personal involvement in the alleged constitutional violation, nor can

he establish a causal connection for his *prima facie* retaliation case.  The Court

agrees that Washington has not carried his Rule 56 burden and will address the

relevant arguments in turn.

### A.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA)[24] requires prisoners to

exhaust available administrative remedies before suing prison officials for alleged

---

[22]  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[23]  *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

[24]  42 U.S.C. § 1997e *et seq*.

constitutional violations.[25]  Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.[26]  The exhaustion process a prisoner must follow is governed by the contours of the prison grievance system in effect where the inmate is incarcerated.[27]

Pennsylvania's Department of Corrections (DOC) employs a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases.[28]  If informal resolution attempts do not solve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based."[29]  An adverse decision by the grievance coordinator must be appealed to the Facility Manager within 15 working days of the initial-review response or rejection.[30]  Finally, an adverse decision by the Facility Manager must be appealed to "Final Review" with the Secretary's Office of

---

[25] *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).

[26] *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[27] *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.

[28] *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").

[29] DC-ADM 804 § 1(A)(3)-(5), (8).

[30] *Id.* § 2(A)(1).

Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.[31]

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court."[32]

Washington is an indefatigable *pro se* litigant who has many years of experience with both federal civil rights litigation[33] and the DOC's administrative grievance process.[34]  Anna argues that Washington—who is well versed in the DOC's grievance process—never asserted a retaliation claim against him in any relevant grievance or appeal and thus procedurally defaulted this claim.

The parties agree that only three of Washington's innumerable grievances are relevant to the instant case: grievance numbers 969009, 969025, and 976678.[35]

---

[31] *Id.* § 2(B)(1).

[32] *Id.* § 1(A)(11).

[33] *See Washington v. Salamon*, No. 4:23-CV-01626, Doc. 9 at 1, 3 (M.D. Pa. Apr. 22, 2024) (Brann, C.J.).

[34] *See* Doc. 39-1 (listing hundreds of grievances filed by Washington); *see also* Doc. 52 at 2 ¶ 4; *id.* at 5 ¶¶ 16, 17; *id.* at 6 ¶ 24 (arguing that his "history of grievances filed over the years show[s] that even if [he] would ha[ve] timely submitted" his final appeal to the SOIGA it would have been rejected or denied).

[35] Doc. 39 ¶¶ 2-3, 20-21.

Anna has attached those grievances, their appeals, and the DOC's responses thereto to his Rule 56 motion.[36]  Washington has done the same.[37]  After thorough scrutiny of these grievances, the Court finds that none of the allegations therein asserts or even mentions a retaliation claim against Anna.  The Court will examine each relevant grievance in the order in which they were filed with the DOC.

In grievance number 969009, Washington's allegations are almost exclusively focused on Unit Manager Knapp.  In fact, Washington opens the grievance by stating that it is "against Unit Manager Knapp [for] cruel & unusual conditions of confinement dated 2-16-22[.]"[38]  Washington goes on to allege that Knapp was responsible for the allegedly unconstitutional conditions of confinement on February 16, 2022, and that his placement in those conditions was retaliation by Knapp for filing "grievances & lawsuits."[39]  In one conclusory sentence, Washington appears to assert that corrections officers "Anna, Steberger, and Hayes" participated in the Eighth Amendment violation via "threats" to place him in the unconstitutional conditions, but no allegation of retaliation is lodged against any of these other corrections officers.[40]  This reading is confirmed by the Facility Grievance Coordinator, who accurately summarized Washington's

---

[36]   *See generally* Doc. 39-2 (no. 969009); Doc. 39-3 (no. 969025); Doc. 39-4 (no. 976678).
[37]   *See generally* Docs. 45-2, 45-3, 45-4.
[38]   *See* Doc. 39-2 at 6.
[39]   *See id.*
[40]   *See id.*

grievance as exclusively targeting Unit Manager Knapp with claims of retaliation and unlawful conditions of confinement.[41]  Washington did not challenge this interpretation on appeal.[42]

Washington simultaneously filed grievance number 969025, which appears to be a continuation of his conditions-of-confinement claim regarding the February 16, 2022 cell placement but against a different prison official, "Lieutenant Myers".[43]  Once again, Washington raises no retaliation claim against Anna in this grievance.  Rather, it primarily involves a similar assertion of unconstitutional conditions of confinement, this time targeting Myers.[44]  The Facility Grievance Coordinator rejected this grievance as duplicative of the claims raised in grievance number 969009.[45]  Washington appealed, and in that appeal he argued that grievance 969025 was not duplicative because it targeted Lieutenant Myers (a new allegedly culpable officer) and therefore should have been investigated rather than rejected.[46]  Washington's appeal essentially concedes that grievance 969025 implicated Lieutenant Myers only.

---

[41]   *See id.* at 5.
[42]   *See id.* at 4.
[43]   *See* Doc. 39-3 at 6-7.
[44]   *See id.*  Although Washington makes a conclusory assertion of retaliation at the end of the second page of this grievance, (*see id.* at 7), that undeveloped allegation is against "Lt. Myers" as well, (*see id.*).
[45]   *See id.* at 5.
[46]   *See id.* at 4.

Finally, in grievance number 976678, Washington asserted that he gave mail and cash slips for postage to Anna and "Hayles" on March 24, 2022, which mail contained artwork for intended recipients Rachel Bliss and Dr. Nicole R. Fleetwood.[47]  Washington further alleged that this mail had not yet been received by Bliss or Fleetwood and desired to know what had happened to the correspondence.[48]  Nowhere in this grievance or its appeals does Washington allege that Anna undertook any unconstitutional conduct.[49]  Of particular note, there is no allegation that Anna (or any other prison official) retaliated against Washington for filing grievances or lawsuits by losing or destroying his artwork.[50]

At bottom, Washington never asserted a claim of retaliation against Anna in his grievances or related appeals, much less did he receive a decision on the merits

---

[47]   *See* Doc. 39-4 at 6.

[48]   *See id.*

[49]   *See id.* at 4, 6.

[50]   *See id.* at 6.  The Court further notes that, even if a retaliation claim had been raised in grievance 976678, Washington failed to timely appeal that grievance to the SOIGA.  As noted in the SOIGA's dismissal, Washington's final appeal was not postmarked until August 19, 2022, long after the June 20, 2022 deadline for appealing the Facility Manager's May 27, 2022 denial of the first-level appeal.  *See id.* at 2, 3; DC-ADM 804 § 2(B)(1).  Administrative exhaustion, however, requires an inmate to *properly* complete each step of the grievance process and receive a decision on the merits.  *See Woodford*, 548 U.S. at 90 (explaining that proper administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (citation omitted)); *see also Williamson v. Wexford Health Sources, Inc.*, 131 F. App'x 888, 890 (3d Cir. 2005) (nonprecedential) (finding that filing initial grievance only was insufficient to exhaust administrative remedies under state prison's three-step grievance requirements).  Washington's purely speculative accusation that Anna may have "withheld" his final appeal to the SOIGA until the time for appeal had lapsed, (*see* Doc. 48 ¶ 27), is unsupported by any evidence and does nothing to rebut the record evidence showing that his final appeal was nearly two months late.

from the SOIGA on such a retaliation claim.  Without raising or properly appealing this claim as required by DC-ADM 804, Washington failed to exhaust administrative remedies and thus procedurally defaulted the instant First Amendment claim.  With no excuse for his procedural default, he is barred from seeking relief in federal court on this claim.[51]  Summary judgment, therefore, must be granted in Anna's favor.

## B.    First Amendment Retaliation

Even if Washington had exhausted his retaliation claim, it would still fail on the merits.  That is because Washington has proffered no evidence of causation.

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[52]  To establish a First Amendment retaliation claim, a plaintiff must show that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the

---

[51]  *See Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 304-05 (3d Cir. 2020); 42 U.S.C. § 1997e(a).

[52]  *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[53]

There are a variety of ways to establish causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action.[54] When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months.[55] However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant."[56] Another approach is to demonstrate "a pattern of antagonism coupled with timing."[57] Finally, causation can be inferred "from the evidence gleaned from the record as a whole."[58] Logically, a plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity[.]"[59]

Discussion of Washington's retaliation claim starts and ends with his failure to establish causation in any of his summary judgment materials. Instead of

---

[53] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

[54] *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[55] *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018).

[56] *Id.*

[57] *DeFlaminis*, 480 F.3d at 267.

[58] *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

[59] *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

addressing Anna's argument regarding absence of causation, Washington spends the majority of his brief in opposition to Anna's Rule 56 motion arguing his Eighth Amendment conditions-of-confinement claim and his Fourteenth Amendment deprivation-of-property claim.[60]  But those claims were dismissed during Section 1915A screening for failure to state a claim upon which relief may be granted.[61]

The rest of Washington's argument in his opposition brief focuses on administrative exhaustion.[62]  However, not only does he fail to establish a genuine dispute of material fact regarding his failure to exhaust his retaliation claim (as thoroughly discussed above), exhaustion is merely the preliminary step required for a prisoner-plaintiff to bring his Section 1983 claim to court.  At summary judgment, Washington must rebut Anna's Rule 56 arguments and evidence showing that there is an absence of causation for Washington's retaliation claim against Anna.  Washington's opposition brief, however, does not even address this issue.

Washington's counterstatement of material facts is no help to him.  That document deals almost exclusively with administrative exhaustion and relies on the same documentary evidence Anna proffered *in support of* the Rule 56 motion.[63]

---

[60]   *See* Doc. 52 at 10-14.
[61]   *See* Doc. 9 at 5-7, 9-10; Doc. 10 ¶ 1.
[62]   *See* Doc. 52 at 3-7.  The remaining balance of the brief is devoted to procedural history and standards of review.  *See id.* at 1-3, 8-9.
[63]   *See generally* Doc. 48.

And although Washington finally identifies a specific prior lawsuit that was the purported motivation for Anna's alleged retaliatory conduct,[64] that lawsuit was filed on October 4, 2021,[65] and therefore does not provide "unusually suggestive timing" with respect to either retaliatory act alleged in the instant case.[66]

In sum, Washington has not proffered evidence to support his *prima facie* First Amendment retaliation case against Anna.  Specifically, Washington has failed to establish a causal connection between the alleged adverse actions and his protected First Amendment conduct.  So even if Washington had properly exhausted this claim, summary judgment would still be granted in Anna's favor.

## IV.    CONCLUSION

Based on the foregoing, the Court will grant Anna's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[64]   *See id.* ¶¶ 7, 15 (identifying "4:21-cv-1746" as protected conduct for retaliation claim).

[65]   *See Washington v. Salamon*, No. 4:21-cv-01746, Doc. 1 at 41, 42 (M.D. Pa. Oct. 13, 2021).

[66]   *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation to defeat summary judgment.").